UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-14047-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

SCOTT JOSEPH TRADER,

    Defendant.

_____/

## MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE

The defendant Scott Trader, through counsel, requests that the Court suppress any and all illegally seized evidence upon the following grounds:

### Statement of Facts

On May 30, 2017, the police department of Thomasville, North Carolina received a complaint that several unknown men had engaged in inappropriate on-line sexual chats with the complainant's nine year old step-daughter, had sent the girl images of child pornography, and had requested that the girl send nude images of herself.  The Thomasville police then contacted the U.S. Department of Homeland Security (HSI).

An HSI special agent in North Carolina inspected the girl's computer tablet and learned that the girl was accessing the social media service "Say Hi."  "Say Hi" is a social media application for adults 18 and older.  On her profile page, the girl claimed to be "Vitoria Jones," an adult, and had posted two "self-images" which appeared to be a woman in her late twenties.

The review further revealed that the suspect user went by the name "Scott."

"Vitoria" began the "Say Hi" chat session with "Scott" by contacting him and asking: "Hi boyfriend. Can you chat please." "Vitoria" then told "Scott" that she had a gift, "Jojo bows," for his kids.[1] "Vitoria" then requested that "Scott" send pictures of his kids. "Scott" sent two pictures of fully clothed children and asks "Vitoria" to send a photo of her child. "Vitoria" sent a picture of a clothed adolescent female and made the comment: "My kids are cute," followed by "I know honey our kids are cute." To this point, "Vitoria" was clearly posing as an adult female with minor female children.

"Scott" then asked "Vitoria" to send a picture of "your daughter naked." "Vitoria" responded: "Yours frist." (sic). "Scott" responded by sending what appears to be a widely circulated Internet nude image of an apparent adolescent female along with the statement: "My youngest daughter." Approximately one minute later "Scott" sent a second nude female apparent adolescent image, also widely circulated on the Internet, and the comment: "My oldest daughter." "Vitoria then sent two nude images of an adolescent female to "Scott." "Scott" then sent a short video of what appears to be an adult male rubbing his penis on the vagina of an adolescent female. He chatted that the video was "Me and my daughter."

Approximately 20 minutes later, "Vitoria" again contacts "Scott" on "Say Hi" and sends "Scott" two nude images of herself. "Vitoria" requested nude photos of "Scott." "Scott" sent a short video of a man masturbating and two still photos of an

---

[1] Apparently, "Jojo Bows" are large colorful hair bows popular among adolescent females.

2

erect penis. "Vitoria" then requested a photo of "Scott's" face. "Scott" sent a still photo of an adult male's face. The image allegedly matched the facial image posted on "Scott's" "Say Hi" user profile page. All communications between the girl and Scott took place over the "Say Hi" application.

HSI Special Agent Cory Brant who was investigating the complaint, noticed that "Scott's" user profile on "Say Hi" indicated that he also was active on another social media service, "KiK," under the user name "Daddyhasafunnyface." Because "Say Hi" is a China-based company, Agent Brant was concerned that any request to "Say Hi" for "Scott's" subscriber records would take too long. Consequently, he sent an "Emergency Situation Disclosure Request by Law Enforcement" to "KiK" instead. In that emergency request, Agent Brant claimed that the request involved a situation "involving death or serious physical injury." Agent Brant then stated: "The KiK user identified below is believed to be actively molesting and sexually exploiting a minor in his custody and/or control. This subject is also involved in the sexual exploitation of other minors." Agent Brant requested that "KiK" produce "the *last known customer name and email address and recent IP addresses* used by the account holder." Agent Brant failed to inform "KiK" that its service was not used in the suspected illegal activity.

"KiK" responded with 29 pages, listing the "basic subscriber information, and the most recent 30 days of IP addresses if available associated with the Kik user name you provided." The "subscriber information" included the email address associated with the "KiK" account, "strader0227@yahoo.com." It also showed that there were 594 logins to the "Daddyhasafunnyface" account from 42 different IP addresses during the 30 days prior to May 31, 2017.

3

Armed with the IP addresses and the email address, Agent Brant then sent an additional emergency disclosure request to Comcast Corporation, the Internet provider for IP address "76.110.46.46.234 on 05/31/2017 at 6:36:32 UTC." In that request, Agent Brant described the emergency as follows: "This subject is believed to have raped his daughter last night and sent videos depicting the rape to others. Since it appears that this subject is raping a child under his custody or control and the offenses are actively taking place this emergency request is being sought." In the next section of the request, Agent Brant states: "The threat appears to be ongoing and the child is continually being sexually abused. It appears the child involved was sexually abused as early as last night." Comcast responded that the subscriber to the IP address was assigned to "Shelly Trader, 1189 SW Edinburgh Dr., Port St. Lucie, 34953…"

Agent Brant then appears to have enlisted the assistance of HSI agents in this district. Local HSI Special Agent Brian Ray conducted a property records search for the 1189 Edinburgh Drive residence and learned that it was purchased by Leon Bonano and Shelly Trader-Bonano on June 16, 2016. He also conducted a drivers license records (DAVID) check of "Scott Trader." Scott Trader's residence address is listed in those records as 4286 Carl Street, Port St. Lucie, Florida. His mailing address was listed as 1189 S.W. Edinburgh Drive, Port St. Lucie, Florida.

Agent Ray also ran a criminal records check on Scott Trader. It showed that Mr. Trader had been charged with Promoting a Sexual Performance by a Child, Lewd Behavior, and Possession of Child Pornography in 2012. All of those charges were dismissed and Mr. Trader pled no contest to a single count of Child Neglect. Mr. Trader was not "convicted;" adjudication was withheld. In December of 2016,

Mr. Trader was charged with Lewd Behavior. He has pled not guilty and was on bond at the time of his arrest in this case. He is presumed innocent.

Finally, Agent Ray conducted a brief surveillance of 1189 S.W. Edinburgh Drive and witnessed an adult woman and a female child, approximately two years of age, enter the residence. He never saw Mr. Trader during the surveillance.

HSI agents then applied for a search warrant for 1189 Edinburgh Drive. HSI Special Agent Lori Cercy submitted a sworn affidavit in which she related the investigation of Agents Brant and Ray. On May 31, 2017, The Honorable William Matthewman, United States Magistrate Judge, signed a search warrant for the residence.

On June 1, 2017, the search warrant was executed. In a bedroom allegedly shared by Mr. Trader and his wife, agents located two smart phones, nine SD cards, and a portable hard drive. A forensic examination of these items revealed evidence of child pornography. Some of the photos/videos allegedly depict Mr. Trader involved in sexual behavior with minors. These items are the subject of the indictment in this case.

## Grounds For Suppression

1. **The release of "Kik" customer records, without a warrant or exigent circumstances, was a violation of Mr. Trader's reasonable privacy expectation under the Fourth Amendment. There were no exigent circumstances supporting the "KiK" release of Mr. Trader's subscriber information.**

2. **The affidavit in support of the search warrant failed to show probable cause on its face. *Leon* does not save the search.**

## Memorandum of Law

**The release of "Kik" customer records, without a warrant or exigent circumstances, was a violation of Mr. Trader's reasonable privacy expectation under the Fourth Amendment. There were no exigent circumstances supporting the "KiK" release of Mr. Trader's subscriber information.**

At the time that Agent Brant requested subscriber information from "KiK," Mr. Trader had a reasonable privacy interest in that information. Accordingly, because no warrant was obtained to permit the release of information, the government must show that the release was due to an exception to the warrant requirement. The purported exception, exigent circumstances, did not exist. The subscriber information and any evidence obtained as a result of its release should be suppressed.

Initially, the defendant acknowledges *United States v. Davis*, 785 F.3d 489 (11th Cir. 2015), in which the Eleventh Circuit held, *en banc*, that cellular phone subscribers do not have a Fourth Amendment privacy interest in their cellular phone call data. However, the defendant contends that the instant case is distinguishable, or, in the alternative, *Davis* was wrongly decided.

The holding in *Davis* was based on the "third party doctrine," first espoused by the Supreme Court in *United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619 (1976). That doctrine holds that one who voluntarily divulges information to a third party no longer retains a reasonable expectation of privacy in such information. Three years after *Miller,* in *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577 (1979), the Court extended the doctrine to include telephone numbers dialed by the defendant and recorded and released by the phone company. "When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company

6

and 'exposed' that information to its equipment in the ordinary course of business." *Id*. at 744.

The type of information released in the instant case is different and much more deserving of privacy protection. First, and perhaps most important, "KiK" released the email address of the subscriber. As anyone in modern society knows, one's email address is often the first part of the secured entry process for Internet accounts. Everything from bank account and credit card access to on-line entertaining and dating services is now accessed through the use of one's email address. Revealing an email address can literally reveal the entirety of an individual's private life. Security concerns abound. *See e.g., Five Reasons You Shouldn't Give Out Your Email Address,* Adam Levin, ABC News, *http://abcnews.go.com/Business/reasons-give-email-candy/story?id=31373966*.

Next, "KiK" released the subscriber's "IP addresses." An IP address is the exact Internet electronic address of the particular Internet subscriber account. In addition to indicating the specific location of the user at the time of use, a significant portion of the user's Internet history could be recovered. A sophisticated and unscrupulous snooper can uncover intimate details about the user's Internet activities. *See, What Is An IP Address And What Can It Reveal About You*, Cale Weissman, Business Insider, 2015, http://www.businessinsider.com/ip-address-what-they-can-reveal-about-you-2015-5. Additionally, it is important to note that an IP address is not provided by the subscriber to an application provider such as "KiK." Instead, the IP address is assigned by the subscriber's Internet provider, without input or control of the subscriber.

These items are very different to the cellphone call data considered in *Davis*. They are the keys to the content of an Internet subscriber's activity. Clearly, an individual has a reasonable and legitimate privacy interest in his or her email address and IP address.

The defendant acknowledges that he has found no case which clearly recognizes a Fourth Amendment privacy interest in personal email addresses or IP addresses. However, due to the pervasive nature of the Internet and its effect on personal communications, courts and legislatures have recognized the need for greater protections of individual privacy in the medium. "Rapid changes in the dynamics of communication and information transmission are evident not just in the technology itself but in what society accepts as proper behavior." *City of Ontario v. Quon*, 560 U.S. 746, 759 130 S.Ct. 2619, 2629 (2010).

Congress has expressly recognized a privacy interest in Internet subscriber information. In 1986, after the *Miller* and *Smith* decisions,[2] Congress enacted the Electronic Communications Privacy Act. 18 U.S.C. § 2702, *et seq*. In § 2702, Congress strictly limited the conditions under which electronic communications providers can release subscriber information to law enforcement and other third parties. The pertinent provision reads as follows:

(a) Prohibitions. --- Except as provided in subsection (b) or (c) –

. . .

> (3) a provider of remote computing service or electronic communication service to the public shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service

---

[2] Congress is presumed to be thoroughly aware of Supreme Court precedent when enacting legislation. *North Star Steel Co. v. Thomas*, 515 U.S. 29, 115 S.Ct. 1927 (1995).

8

>(not including the contents of communications covered by paragraph (1) or (2) to any government entity.
>
>. . .
>
>(b) Exceptions for disclosure of customer records. –
>
>(4) to a government entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency;

The Eleventh Circuit has found that email addresses are "personal information" worthy of protection. *See, e.g., United States v. Hastie*, 854 F.3d 1298 (11th Cir. 2017) (email address is protected "personal information" under the Drivers Privacy Protection Act, 18 U.S.C. § 2721 *et seq*.) Other federal courts have recognized a right of privacy in one's email address as well. *Government Accountability Project v. U.S. Department of State*, 699 F.Supp. 2d 97 (D.C. 2010) (individual's right of privacy in email address precluded release under FOIA). Many states have also codified a right to privacy in one's personal email address. *See, e.g.*, O.C.G.A. § 50–18–72(20)(A); Cal. Gov't Code § 6254.4; 5 Ill. Comp. Stat. 140/7(1)(c); Tex. Gov't Code § 552.102(a). These recognitions of the changing nature of modern communication support the conclusion that *Miller* and *Smith* are no longer sufficient to define or enforce an individual's privacy rights under the Fourth Amendment.

Recently, the Supreme Court expanded Fourth Amendment protection to data, even though that data may have been provided to a third party. In *Riley v. California*, ___ U.S. ___, 134 S.Ct. 2473 (2014), the Court noted that with today's technology, the average cell phone user is likely to not even know if her Internet information is kept on her phone or is stored in "the Cloud."  "The United States

concedes that the search incident to arrest exception may not be stretched to cover a search of files accessed remotely---that is, a search of files stored in the cloud.  Such a search would be like finding a key in a suspect's pocket and arguing that it allowed law enforcement to unlock and search a house." This partial abrogation of *Miller* and *Smith*, and the "third party doctrine," indicates that the High Court now questions the efficacy of those decisions in today's communications landscape.

As noted, the release of an email address and IP address allow unscrupulous law enforcement or other third parties to examine the content and patterns of a subscriber's Internet use.  Those pieces of private information were also "keys" in which Mr. Trader had a reasonable and legitimate privacy interest.  "The judiciary must not allow the ubiquity of technology---which threatens to cause greater and greater intrusions into our private lives---to erode our constitutional protections." *Davis*, 785 F.3d at 533 (J. Martin, dissenting).

The defendant further contends that there was no exception to the warrant requirement which authorized the release of information in this case.  The HSI agents presumably relied on the exception stated in 18 U.S.C. § 2702(c)(4), *supra*, *i.e.*, "an emergency involving death or serious physical injury."  In the context of a Fourth Amendment search this exception would be most similar to "exigent circumstances."

Initially, the exception of exigent circumstances should be restricted to instances of immediate life threatening danger.  It should not be sanctioned as an investigative tool as used in this case.

"The exigent circumstances doctrine applies only when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate

10

action." *United States v. Satterfield,* 743 F.2d 827, 844 (11th Cir.1984). "[W]hen exigent circumstances demand an immediate response, particularly where there is danger to human life, protection of the public becomes paramount and can justify a limited, warrantless intrusion into the home." *United States v. Holloway,* 290 F.3d 1331, 1334 (11th Cir.2002). The government bears the burden of proving that the exception applies and must establish both an exigency and probable cause. *Id.*

In a similar, although arguably more serious, situation the Eleventh Circuit declined to find that exigent circumstances existed. In *United States v. Davis*, 313 F.3d 1300 (11th Cir. 2002) the Florida Department of Children and Family Services received a detailed report from a civilian caller who stated that the defendant was holding captive in his trailer home a girl, age fifteen, to whom he was providing drugs and with whom he was having sexual intercourse. The caller also reported that appellant possessed guns and explosives. Police arrived at the scene and, without a warrant, entered and searched the defendant's house. On appeal, the Eleventh Circuit refused to conclude that the information constituted exigent circumstances, but instead upheld the seizure of a firearm based upon the independent source doctrine.

The information possessed by HSI agents in this case is even less reliable and less in quantity than that in *Davis*. Here, the agents had photographs which revealed no identities and no certainty that the individuals in the photographs were actually who "Scott" alleged them to be. There was no certainty that the "Scott" accessing "Say Hi" was also the "KiK" account holder. In short, the agent had nothing more than a hunch. Last, there was no allegation of a kidnapping, illegal drugs, dangerous firearms or explosives. There was no allegation that someone's

life was in danger. There simply were not exigent circumstances which permitted the obtaining of private information without first acquiring a warrant. Any and all evidence obtained as a result of the illegal search must be suppressed.

**The affidavit in support of the search warrant failed to show probable cause on its face.**

Despite the fact that agents obtained a warrant to search the Trader residence, the warrant affidavit failed to state probable cause to believe that evidence of a crime committed by "Say Hi" user "Scott" would be found at the Trader house. The agents' substitution of information regarding "KiK" user "Daddyhasafunnyface" and his/her connection to the residence was insufficient to establish probable cause that evidence of the "Say Hi" crime would be found at the same house. There was no evidence that the IP address used by the "KiK' subscriber had been used any crimes whatsoever. And the idea that the IP address associated with the "KiK" account would be the same as that associated with the suspect "Say Hi" account was nothing more than a hunch on the part of agents.

Moreover, the agents could make little or no connection between Scott Trader and the residence to be searched---his mother's residence. The mere listing of Mrs. Trader's residence as a mailing address for Scott Trader with the Department of Motor Vehicles was insufficient for probable cause. This too was simply a hunch.

"It is critical to a showing of probable cause that the affidavit state facts sufficient to justify a conclusion that evidence or contraband will probably be found *at the premises to be searched.*" *United States v. Martin*, 297 F.3d 1308 (2002) (internal citations omitted) (emphasis added). Thus, the affidavit must contain "sufficient information to conclude that a fair probability existed that seizable

12

evidence would be found in the place sought to be searched." *Id.* Specifically, the affidavit must establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity. *Id.*

In the instant case, there was no connection shown between the residence to be searched and the alleged criminal activity on "Say Hi." The suspect user of "Say Hi," even if he/she was also the "Kik" user, could have used a million other IP addresses. Combined with the fact that the agents could establish little or no contact between the defendant and the residence to be searched, it is clear that probable cause did not exist.

In *United States v. Contreras-Rodriguez*, 291 Fed. Appx. 989 (11th Cir. 2008), the Eleventh Circuit found probable cause lacking in a similar situation. There, agents applied for a search warrant based upon evidence that the property owners were housing and employing illegal aliens. The affidavit also requested leave to search other residences on the suspects' property, but failed to state probable cause connecting those other residences to the illegal activity. The court found the resulting warrant deficient, but denied exclusion based on *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 3420 (1984).

Had the agents in this case obtained the IP address from the "Say Hi" user and connected it to the Trader residence, probable cause may have existed. Instead, they just relied on a hunch that the IP address would be the same. That hunch was not probable cause. The effect of issuing a warrant based on the HSI agents' hypothesis was to sanction an exploratory search of the Trader residence based on a hunch, which is impermissible. *See Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) (Fourth Amendment is designed specifically to

13

prohibit the use of general warrants whereby the authorities engage in "a general, exploratory rummaging in a person's belongings.").

The defendant urges that *Leon* does not save the search in this case. The exclusionary rule does not bar the use of evidence seized by police officers acting in good faith reliance on a search warrant issued by a neutral and detached magistrate, even though it is later found to be deficient. However, the "good faith" exception to the exclusionary rule does not apply when: 1) the judge was intentionally misled by police in the search warrant affidavit; 2) the judge wholly abandoned her detached and neutral role; 3) the warrant was based upon an affidavit so lacking in probable cause as to render official belief in its existence entirely unreasonable; and 4) the warrant was so facially deficient by failing to particularize the place to be searched or things to be seized that reasonable officers could not presume it to be valid. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405 (1984).

In this case, as noted, the warrant affidavit was so lacking in probable cause that it was unreasonable for the officers to assume that it was valid. A reasonably well-trained officer would have known that the affidavit lacked probable cause.

"Our reading of *Leon* persuades us that the proper test is whether the *officer* acted in objective good faith under all the circumstances. The focus in *Leon* is on the officer. '[T]he officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable....'" *United States v. Taxacher*, 902 F.3d 867, 871 (11th Cir. 1990) (quoting *Leon*). "The good-faith inquiry is confined to the objectively

14

ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id*.

The instant affidavit stated no connection between the residence and any criminal activity whatsoever. A well-trained HSI special agent knows that a search warrant affidavit must state probable cause to believe that evidence of a specific crime will be found at a specific place to be searched. In this case, the agent was required to show that evidence of the "Say Hi" crime would probably be found at Mrs. Trader's residence. It was, and is, obvious that supplying the Court with the IP address for an Internet application not connected with the suspect offense does not constitute probable cause. The agents did, or should have, known better.

Finally, the defendant requests that the Court conduct an evidentiary hearing and oral argument of the issues. If permitted, the defendant would offer expert testimony regarding the nature of personal email addresses and IP addresses and the need for privacy of those matters.

WHEREFORE the defendant requests that the Court grant the motion and suppress any and all evidence seized as a result of the search.

          Respectfully submitted,

          MICHAEL CARUSO
          FEDERAL PUBLIC DEFENDER

By:   *s/ Fletcher Peacock*
      Fletcher Peacock
      Assistant Federal Public Defender
      Florida Bar No. 441996
      109 North Second Street
      Fort Pierce, Florida 34950
      Tel: 772-489-2123
      Fax: 772-489-3997
      E-Mail: Fletcher_Peacock@fd.org

# **CERTIFICATE OF SERVICE**

I HEREBY certify that on September 6, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                        By:  *s/Fletcher Peacock,* AFPD
                                                 Fletcher Peacock

## SERVICE LIST

### UNITED STATES v. SCOTT JOSEPH TRADER
Case No. 17-14047-CR-MIDDLEBROOKS
United States District Court, Southern District of Florida

**Fletcher Peacock**
**Fletcher_Peacock@fd.org**
**Assistant Federal Public Defender**
109 North Second Street
Fort Pierce, FL 34950
Tel: 772-489-2123
Fax: 772-489-3997
Attorney for Trader
Notices of Electronic Filing

**Marton Gyires**
**marton.gyires@usdoj.gov**
**Assistant United States Attorney**
United States Attorney's Office
101 South U.S. Hwy 1, Suite 3100
Fort Pierce, Florida 34950
Tel: 772-293-0952
Fax: 772-595-3606
Notice of Electronic Filing