**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-cr-14047-MIDDLEBROOKS**

**UNITED STATES OF AMERICA**

**vs.**

**SCOTT JOSEPH TRADER,**

      **Defendant.**
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

**I.**    **Introduction**

The government files this response to the defendant Scott Joseph Trader's motion to suppress illegally obtained evidence.  This is a child exploitation case in which the defendant is charged by Indictment with: enticement of a minor to engage in sexual activity in violation of 18:2422(b) (Count 1); distribution of material containing visual depictions of sexual exploitation of minors, in violation of 18: 2252(a)(2) & (b)(1) (Count 2); possession of matter containing visual depictions of sexual exploitation of minors in violation of 18: 2252(a)(4)(B) & (b)(2) (Count 3), and production of material containing visual depictions of sexual exploitation of minors in violation of 18: 2251(a) & (e) (Counts 4 and 5).  The defendant was arrested at his home during the early morning hours of June 1, 2017 after law enforcement executed a search warrant at the residence.  The search warrant, application, affidavit, and attachments are attached to this pleading as Exhibit 1.[1]  During the search of the home pursuant to the warrant, police found voluminous and overwhelming evidence against the defendant with respect to the charges in the indictment.

---

[1] Dates of birth have been redacted from the affidavit.

The defendant seeks to suppress all of that evidence by making two claims: Issue #1) he claims that the search warrant affidavit relied on illegally obtained evidence, namely, subscriber information that was given to law enforcement by a social media company without a warrant; and Issue #2) he claims that the search warrant lacked probable cause on its face.   The defendant's motions should be denied.  As to obtaining subscriber information without a warrant, the defendant admits he has not found a single case to support his claim.  To the contrary, there are numerous cases across the country that have held that law enforcement can obtain subscriber information from various Internet service providers and telephone companies merely with a subpoena and without a warrant.  As to the defendant's claim that the warrant lacked probable cause, this too lacks merit, as evidenced by the facts contained in the attached search warrant affidavit.

The government further submits that since these issues are questions of law, not fact, the Court can reach its conclusion by reviewing the attached search warrant affidavit and briefs, and need not hold an evidentiary hearing.  "[W]here a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion."  United States v. Cooper, 203 F.3d 1279, 1285 (11th Cir. 2000). The Court need not rely on the first few pages of the defendant's motion containing a "statement of facts." See e.g., United States v. Robinson, 336 F.3d 1293, 1297 (11th Cir. 2003) (suppression court is not required to look beyond four corners of search warrant application to ensure that executing officer's reliance on warrant was reasonable, for purpose of applying Leon good faith exception to exclusionary rule).

## II. __Facts__

The facts relevant to make a ruling are contained in the attached search warrant affidavit.[2]

The warrant authorized the search of the property located at 1189 SW Edinburgh Drive, Port St.

Lucie, Florida, 34953.  Some relevant portions of the affidavit are also copied here:

> On 30 May 2017, the Thomasville Police Department, North Carolina, received a complaint from the stepfather of a 9 year old victim. The complainant reported his discovery of explicit chat communications between the victim and her chat partner "Scott" on Smartphone Application #1. The complainant provided the victim's mobile device to police for examination. The Thomasville Police Department requested the assistance of HSI Winston-Salem in furthering the investigation.

> HSI Winston-Salem's examination of the victim's device revealed text communications with Scott on the evening of 30 May 2017, using Smartphone Application #1. The victim provided Scott pictures which clearly indicated she was a preteen female. Scott requested nude images from the victim and transmitted a child pornography video to the victim. The video was a 37 second long depiction of an adult male rubbing his penis on the vagina of a preteen female. Scott claimed the female depicted in the video was his daughter. Scott also sent a masturbation video to the victim, along with a still image which depicted Scott's face.

> Scott had a profile on Smartphone Application #1. The profile had a picture of his face, along with an apparent minor female. The face depicted in the still image transmitted to the victim matched the Scott profile image. Scott also listed his username for Smartphone Application #2.

> Smartphone Application #1 is headquartered outside of the United States and it is unknown if they will respond to United States process. Smartphone Application #2 was sent an emergency disclosure request for the subscriber information associated with the user name provided in the Smartphone Application #1 "Scott" user profile. Smartphone Application #2 responded, indicating the email account associated with the account was strader0227@yahoo.com. Smartphone Application #2 also provided a login history, indicating there were logons to the account from IP address 76.110.46.234 starting 1 May 2017, through 31 May 2017, at 06:36 UTC. The IP address is registered to Comcast. The Smartphone Application #2 profile picture matched the aforementioned "Scott" profile and still image pictures.

---

[2] The facts of the entire investigation are of course far more extensive than just the facts in the search warrant application.

Comcast was sent an emergency disclosure request for the subscriber information associated with IP address 76.110.46.234 on 31 May 2017 at 06:36 UTC. Comcast responded, identifying the subscriber as Shelly Trader, 1189 SW Edinburgh Drive, Port St. Lucie, Florida, 34953.

On 31 May 2017, Special Agent Ray conducted a property records search for 1189 SW Edinburgh Drive, Port St. Lucie, Florida, on the St. Lucie County Property Appraiser's website. According to the website, 1189 SW Edinburgh Drive, Port St. Lucie, Florida was purchased by Leon Bonanno and Shelly Trader-Bonanno on 16 June 2016.

Special Agent Ray conducted a check of the Florida Department of Highway Safety and Motor Vehicle (DHSMV) records which indicated that on 1 August 2016, Scott TRADER, born [xx] June 19[xx], listed his mailing address as 1189 SW Edinburgh Drive, Port St. Lucie, Florida, 34953. TRADER's Driver License photograph matches the aforementioned "Scott" user profile and transmitted images.  TRADER did not update his residential address, 4286 SW Carl Street, Port St. Lucie, Florida, which was also Shelly Trader-Bonanno's, address until the purchase of the 1189 SW Edinburgh Drive property. According to DHSMV records, Shelly Trader-Bonanno was born [x] July 19[xx], which is consistent with her being Scott TRADER's mother.

Special Agent Ray conducted a criminal history record check which revealed that in 2012, Scott TRADER was arrested by the Port St. Lucie Police Department for Promoting a Sexual Performance by a Child, Lewd Behavior, and Possession of Child Pornography. Those charges were dropped/abandoned, and TRADER was convicted for Felony Child Neglect. In December 2016, TRADER was arrested for Lewd Behavior – Molesting a Victim less than 12 years of age.

On 31 May 2017, surveillance of 1189 SW Edinburgh Drive, Port St. Lucie, Florida, was established by HSI Ft. Pierce Agents. A female child, approximately two years of age, was seen entering the residence.

## III.  Discussion

### A. Issue #1.  Obtaining subscriber information without a warrant is proper under the Fourth Amendment and the Electronic Communications Privacy Act.

#### i.  Subscriber Information and the Fourth Amendment

The defendant argues that he has an expectation of privacy in the subscriber information,

that is, an email address and IP address, that law enforcement obtained from "Kik," which is

"Smartphone application #2" in the affidavit.[3]  The defendant in his motion admits that he "has found no case which clearly recognizes a Fourth Amendment privacy interest in personal email addresses or IP addresses." [DE 13 at 8].  Neither has the government.  To the contrary, the government has found numerous cases holding the exact opposite—that obtaining subscriber information, including IP addresses and email addresses, does not require a search warrant.

"[T]he application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." Smith v. Maryland, 442 U.S. 735, 740 (1979).  A person claiming a violation of the Fourth Amendment must demonstrate that he has a subjective expectation of privacy and that society is prepared to recognize that expectation as objectively reasonable.  Rakas v. Illinois, 439 U.S. 128, 143 (1978).  The third-party doctrine applies when someone voluntarily discloses information to a third party; an expectation of privacy in such information fails the objectively reasonable prong. See Smith, 442 U.S. at 743–44, 99 S.Ct. 2577; see, e.g., U.S. v. Davis, 785 F.3d 498, 511–12 (11th Cir. 2015).

All federal courts that have addressed the instant issue "uniformly agree that, because of the third-party doctrine, computer users lack a reasonable expectation of privacy in their IP addresses, subscriber information, and similar descriptive information they disclose to third parties [such as internet service providers] to facilitate Internet service."  United States v. Taylor, 2017 WL 1437511, at *6 (N.D. Ala. Apr. 24, 2017) (a District Court in the 11th Circuit citing numerous cases); see also U.S. v. Beckett, 369 Fed.Appx. 52, 56 (11th Cir. 2010) (unpublished) (a person has no reasonable expectation of privacy in identifying information, including IP addresses,

---

[3] The affidavit mentioned "Smartphone Application #1" and "Smartphone Application #2," without specifying the names of the applications.  Although not referenced in the affidavit, the government agrees with the statements in the defendant's motion indicating that "SayHi" is Application #1 and "Kik" is #2.

transmitted for ISPs and phone providers to provide service); U.S. v. Carpenter, 819 F.3d 880, 887 (6th Cir. 2016) ("The Fourth Amendment protects the content of the modern-day letter, the email. But courts have not (yet, at least) extended those protections to the internet analogue to envelope markings, namely the metadata used to route internet communications, like sender and recipient addresses on an email, or IP addresses."); U.S. v. Weast, 811 F.3d 743, 748 (5th Cir. 2016) (holding that the Fourth Amendment does not protect IP addresses or peer-to-peer shared files); United States v. Forrester, 512 F.3d 500, 510 (9th Cir. 2008) ("Like telephone numbers [in the context of pen registers], which provide instructions to the 'switching equipment that processed those numbers,' e-mail to/from addresses and IP addresses are not merely passively conveyed through third party equipment, but rather are voluntarily turned over in order to direct the third party's servers."); United States v. Christie, 624 F.3d 558, 573–74 (3d Cir. 2010) ("Similarly, no reasonable expectation of privacy exists in an IP address, because that information is also conveyed to and, indeed, from third parties, including ISPs."); Guest v. Leis, 255 F.3d 325, 336 (6th Cir. 2001) (holding, in a non-criminal context, that "computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person-the system operator"); United States v. Hambrick, 225 F.3d 656 (4th Cir. 2000) (unpublished) (holding that there was no legitimate expectation of privacy in noncontent customer information provided to an internet service provider by one of its customers); United States v. Werdene, No. 15-434, 2016 WL 3002376 (E.D. Pa. May 18, 2016) ("a necessary aspect of the Tor network is the initial transmission of a user's IP address to a third party . . . "[I]n order for a prospective user to use the Tor network[,] they must disclose information, including their IP addresses, to unknown individuals running Tor nodes, so that their communications can be directed toward their destinations."); United States v. Adams, 2016 WL 4212079 at *4, Case no. 6:16-cr-

11-Orl-40GJK, August 10, 2016 (M.D. FL) ("Applying these principles, the Court finds Defendant does not have a reasonable expectation of privacy in the IP address associated with the computer he used to access Playpen [a global online forum dedicated to the advertisement and distribution of child pornography]"); United States v. Michaud, No. 3:15-CR-05351-RJB, 2016 WL 337263, at *7 (W.D. Wash. Jan. 28, 2016) ("Mr. Michaud has no reasonable expectation of privacy of the most significant information gathered by deployment of the NIT, Mr. Michaud's assigned IP address, which ultimately led to Mr. Michaud's geographic location."); United States v. D'Andrea, 497 F.Supp.2d 117, 120 (D.Mass. 2007) ("The Smith line of cases has led federal courts to uniformly conclude that internet users have no reasonable expectation of privacy in their subscriber information, the length of their stored files, and other noncontent data to which service providers must have access."); Freedman v. America Online, Inc., 412 F.Supp.2d 174, 181 (D.Conn. 2005) ("In the cases in which the issue has been considered, courts have universally found that, for purposes of the Fourth Amendment, a subscriber does not maintain a reasonable expectation of privacy with respect to his subscriber information."); United States v. Sherr, 400 F.Supp.2d 843, 848 (D.Md. 2005) ("The courts that have already addressed this issue ... uniformly have found that individuals have no Fourth Amendment privacy interest in subscriber information given to an ISP."); United States v. Cox, 190 F.Supp.2d 330, 332 (N.D.N.Y. 2002) (same); United States v. Kennedy, 81 F.Supp.2d 1103, 1110 (D.Kan. 2000) ("Defendant's constitutional rights were not violated when [internet provider] divulged his subscriber information to the government. Defendant has not demonstrated an objectively reasonable legitimate expectation of privacy in his subscriber information.").

The 11th Circuit unpublished Beckett case explains the rationale:

Beckett could not have had a reasonable expectation of privacy in the information that was obtained from the ISPs and the phone companies. The

investigators did not recover any information related to content. **Rather, the information consisted of the identifying information transmitted during internet usage and phone calls that is necessary for the ISPs and phone companies to perform their services. It is unreasonable for Beckett to have been unaware that such information was being transmitted to the ISPs and phone companies and so he "assumed the risk that the company would reveal to police the [information]."** Smith, 442 U.S. at 744, 99 S.Ct. at 2582 ("When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and 'exposed' that information to its equipment in the ordinary course of business."). Accordingly, we affirm in this respect.

Beckett, 369 Fed.Appx. at 56 (emphasis added).

The defendant makes no mention of the vast number of cases across the country that have ruled against him on this issue. The defendant does point out United States v. Davis, 785 F.3d 498, 511 (11th Circuit 2015), which held that the government's obtaining a § 2703(d) court order for the production of MetroPCS's business records containing historical cell tower location information did <u>not</u> violate the Fourth Amendment. The holding and rationale in Davis is essentially the same as the issue here, but it involved historical cell tower information from a phone company rather than subscriber information from a smartphone application company (Kik). Just like the numerous cases cited above in the context of IP addresses, the Davis Court likewise relied on the third-party doctrine, saying "Davis can assert neither ownership nor possession of the third-party's business records he sought to suppress [ . . .] Instead, those cell tower records were created by MetroPCS, stored on its own premises, and subject to its control." Id. The defendant attempts to distinguish the phone records in Davis from the issue of IP and email addresses in this case, but flatly ignores ample precedent that is precisely on point as to IP and email addresses, which are cited above.[4]

---

[4] The government has not found a published 11th Circuit case directly holding that computer users lack a reasonable expectation of privacy in their IP addresses or email address. But the above-cited cases do include: an unpublished 11th Circuit case (Beckett); the published 11th Circuit case Davis, which uses the same rationale; two District Courts in the 11th Circuit (Taylor and Adams); numerous published circuit cases from other circuits; and numerous district court cases from other circuits. There are in fact many more cases that can be cited, and neither the government nor defense has found a single case holding the opposite.

As such, there is ample precedent to resolve the Fourth Amendment issue in the government's favor.

      ii.    <u>The Electronic Communications Privacy Act</u>

The defendant references the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2701-2712 and argues that there were "no exigent circumstances supporting the 'Kik' release of Mr. Trader's subscriber information." [DE at 6, 8, 10-12]. The ECPA has no bearing on the outcome of this case. First of all, if the defendant is arguing that there was a violation of that Act, he is mistaken. Second, even if there was a violation of the ECPA, suppression is not a remedy. To be clear, no law imposes "exigent circumstances" to obtain subscriber information. The proper framework for obtaining subscriber information under the ECPA is the following.

The stored communication portion of the ECPA regulates how the government can obtain stored customer or subscriber records from providers such as Internet service providers and telephone companies. Whenever agents or prosecutors seek stored email, account records, or subscriber information from a provider, they must comply with ECPA. When the government intends to obtain subscriber records from a provider in connection with a criminal investigation, the most relevant ECPA provisions are 18 U.S.C. § 2703, which applies when the government seeks to compel production of the records, and 18 U.S.C. § 2702, which applies when a provider is willing to disclose the records voluntarily to the government. Section 2702 is what applies in this case and is the section that the defendant apparently claims was violated. [DE 13 at 8-10].

Under 18 U.S.C. § 2702(c)(4), a provider "may divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) [. . .]  to a governmental entity, **if the provider, in good faith, believes** that an

emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency."  (emphasis added).

In this case, the search warrant affidavit explained that Kik responded to an "emergency disclosure request."  By virtue of the fact that Kik responded, it is clear that **Kik believed** an emergency did exist and provided the government with subscriber information.  This is wholly proper under the plain language of the ECPA and there is no indication whatsoever that the ECPA was violated in this case.  It does not matter if there was an objective emergency or not, although the affidavit does contains facts showing there was indeed an emergency.  The ECPA explicitly states that what matters is whether the provider believed in good faith that there was an emergency, and that clearly was the case here.

Even if there somehow was a violation of the ECPA, it does not matter, because the statute specifically states that suppression is not a remedy.  18 U.S.C. § 2708 ("The [damages] remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter.").  Circuit courts have agreed.  See e.g., United States v. Beckett, 369 Fed. Appx. 52, 55-56 (11th Cir. 2010) (unpublished) (("The ECPA does not statutorily provide for suppression of evidence obtained as a result of violations of the Act . . .The ECPA authorizes an aggrieved party to file a civil action for the 'knowing or intentional' violation of the Act.") (quoting 18 U.S.C. § 2707(a)); United States v. Smith, 155 F.3d 1051, 1056 (9th Cir. 1998), cert. denied, 525 U.S. 1071(1999) ("the Stored Communications Act expressly rules out exclusion as a remedy").  Instead, civil suits are available for statutory violations of the SCA. See 18 U.S.C. §§ 2707, 2712.

As such, litigating whether the ECPA was properly followed in this case is not necessary or proper.

In sum, the defendant's motion as to Issue #1 should be denied because obtaining subscriber information without a warrant is proper under the Fourth Amendment and the ECPA.

**B. Issue #2. The search warrant affidavit contained probable cause to search the house and if the Court were to hold otherwise, the good faith exception prevents suppression of the evidence.**

      i.    <u>Probable Cause for the Search Warrant</u>

The defendant next argues that the search warrant affidavit lacked probable cause. This claim has no merit. The government respectfully submits that a reading of the affidavit proves sufficient probable cause. In addition to simply reading the affidavit, the government will also offer the following explanation of the affidavit.

An affidavit supporting a warrant to search a residence must contain "sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place sought to be searched." <u>United States v. Martin</u>, 297 F.3d 1308, 1314 (11th Cir. 2002) (quoting <u>United States v. Pigrum</u>, 922 F.2d 249, 53 (5th Cir. 1991)). Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity. <u>See Id.</u> (citing <u>United States v. Marion</u>, 238 F.3d 965, 969 (8th Cir.2001)). The affidavit in this case clearly connects all of these things.

First, the affidavit connects the defendant with criminal activity, namely, the sexting conversation had with the 9-year old victim. The warrant explains that an image of a person's actual face was sent to a nine-year old victim, along with a masturbation video and a 37-second long child pornography video, saying:

> HSI Winston-Salem's examination of the victim's device revealed text communications with Scott on the evening of 30 May 2017, using Smartphone Application #1. The victim provided Scott pictures which clearly indicated she was a preteen female. Scott requested nude images from the victim and transmitted a child pornography video to the victim. The video was a 37 second long depiction of an adult male rubbing his penis on the vagina of a preteen female. Scott claimed

the female depicted in the video was his daughter. Scott also sent a masturbation video to the victim, along with a still image which depicted Scott's face.

The affidavit then goes on to explain that the image of the person's face that was sent to the victim matched the person depicted in the defendant's driver's license photograph, which license included his name, "Scott Joseph Trader." The driver's license image also matched the photograph on the user profile for smart phone application #1 ("SayHi"), which was the application used to transmit child pornography with the 9-year old victim. "Scott's" SayHi profile bore the name "Scott" (which of course is the first name on the defendant's driver's license). The same SayHi user profile also listed "Scott's" username for another smartphone application, Kik. That Kik profile likewise had a photo that matched the person depicted in the defendant's driver's license photo (who is the defendant).

Already at this point in the affidavit there is probable cause the defendant was engaged in the transmission/enticement/possession/production of child pornography, since a still image of the defendant's face, along with child pornography, was sent to the victim by a person who was using two smartphone apps that had the defendant's photograph as the apps' profile pictures, with one app using the name "Scott." But there is more in the affidavit, and this next part links the defendant to the crime and to the residence. The IP address (76.110.46.234) belonging to the device using **"Scott's" Kik app on the same date as the date of the SayHi sexting conversation** (May 30, 2017), was registered by Comcast as a subscriber residing at the target residence, **which is the same address listed by the defendant as his mailing address in Florida DMV records**.[5] Indeed, that same IP address (76.110.46.234) was used by "Scott's" Kik profile starting May 1, 2017, through May 31, 2017. At this point, the government would submit that much more than

---

[5] As mentioned in the affidavit, the address listed on the defendant's driver's license itself was not the target residence; rather, the defendant listed the target residence as his mailing address with the DMV.

mere probable cause existed to connect the defendant to both the crime and the residence.  The standard here is not beyond all doubt, it's probable cause (the relatively low standard of "a fair probability")  Illinois v. Gates, 462 U.S. 213, 238,  231, 103 (1983 ("All we have required is the kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'")).  Moreover, the end of the affidavit added even more facts to tie the defendant to the crime, saying:

> [The agent] conducted a criminal history record check which revealed that in 2012, Scott TRADER was arrested by the Port St. Lucie Police Department for Promoting a Sexual Performance by a Child, Lewd Behavior, and Possession of Child Pornography. Those charges were dropped/abandoned, and TRADER was convicted for Felony Child Neglect. In December 2016, TRADER was arrested for Lewd Behavior – Molesting a Victim less than 12 years of age.

As such, there was ample evidence connecting the defendant to both the crime and residence.

The defendant's argument appears to be that there was no evidence in the affidavit that the Kik account was used to commit any crime, and that is a basis to quash the warrant.  This argument presupposes a totally incorrect standard for the search warrant.  The standard for the warrant here is whether there was probable cause that evidence of a crime existed in the *house*.  The standard is not whether there was probable cause that evidence of  a crime existed in the Kik account.  This was not a search warrant to be served on Kik.  The Kik account was referenced in the affidavit not to allege that it was used in a crime, but because it connected the defendant to the crime and to the residence, and therefore helped provide the requisite probable cause to search the residence.  The Kik account connected the defendant to the crime because the user profile for SayHi (which was the app used to illegally communicate with the victim) listed that person's  username for Kik.  That Kik user profile, and also the SayHi user profile, both had a photo of the defendant as their profile pictures.  As such, it is simple common sense to think that the person using the Kik user profile and the person using the SayHi user profile are one in in the same person.  Accordingly, it is again

simple common sense to think that if one knows the location from which the user is using the Kik app on a given day, then one also knows the location from which that same user is using the SayHi app on that same day. That location was the target residence on May 30, 2017, the date of the sexting conversation and transmission of child pornography.

In sum, ample probable cause existed for the warrant and the defendant's motion should be denied.

### ii.   The Good Faith Exception

Should the Court hold that the affidavit lacked probable cause, the Government would argue that the good-faith exception would still allow the evidence in this case to be admitted at trial. "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness," Illinois v. Gates, 462 U.S., at 267, 103 S.Ct., at 2347 (WHITE, J., concurring in judgment), for "a warrant issued by a magistrate normally suffices to establish" that a law enforcement officer has "acted in good faith in conducting the search." United States v. Ross, 456 U.S. 798, 823, n. 32, 102 S.Ct. 2157, 2172, n. 32, 72 L.Ed.2d 572 (1982). Thus, the exclusionary rule does not bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. United States v. Leon, 468 U.S. 897 (1984). Of course, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable. Id. at 922, 104 S. Ct. at 3420.

As the defendant cites in his motion, there are four situations outlined in Leon where the good faith exception to the exclusionary rule would not apply: (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth (i.e., a Franks v. Delaware violation); (2) the

magistrate wholly abandoned his detached and neutral judicial role; (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient by failing to particularize the place to be searched or the things to be seized, that the executing officers could not reasonably presume it to be valid. United States v. Martin, 297 F.3d 1308 (11th Cir. 2002); United States v. Robinson, 336 F.3d 1293 (11th Cir. 2003).

The defendant argues only the third option above, that the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.[6] The question of whether a police officer's belief in the existence of probable cause underlying a search warrant was objectively reasonable is answered using the viewpoint of a reasonable officer, not a reasonable jurist. United States v. Taxacher, 902 F.2d 867 (11th Cir. 1990).

In this case, the facts in the affidavit are simply too extensive for the defendant's argument to have merit. As such, the defendant's request should be denied.[7]

In sum, the defendant's motion as to Issue #2 should be denied because the search warrant affidavit contained probable cause to search the house and if the Court were to hold otherwise, the good faith exception prevents suppression of the evidence.

---

[6] The defendant has not alleged a Franks violation. Where a defendant makes a substantial preliminary showing that an affiant knowingly and intentionally included a false statement in an affidavit, or made the false statement with reckless disregard for its truth, and the false statement was necessary to the finding of probable cause, then constitutional mandate requires that a hearing be held at the defendant's request. Franks v. Deleware, 438 U.S. 154 (1978). There must be a preliminary showing that a material omission or false statement can be proven, not a mere allegation or an unsupported request for a hearing. United States v. Barsoum, 763 F.3d 1321, 1329 (11th Cir. 2014). As such, there is no Franks issue before the Court in this case.

[7] Should the court find that the affidavit lacked probable cause and that the good faith exception does not apply, the government would perhaps also argue exigency, inevitable discovery, and other arguments it may find appropriate to prevent suppression of the evidence.

## IV.  <u>Conclusion</u>

The government respectfully requests that the Court deny the defendant's motion because 1) obtaining subscriber information without a warrant is routine, lawful police conduct, and 2) the search warrant in this case was supported by probable cause.  The government further submits that since these issues are questions of law, not fact, the Court can reach its conclusion by reviewing the attached search warrant affidavit and briefs, and need not hold an evidentiary hearing. "[W]here a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion."  <u>United States v. Cooper</u>, 203 F.3d 1279, 1285 (11th Cir. 2000).  <u>See also</u> <u>United States v. Allison</u>, 953 F.2d 1346, 1350 (11th Cir. 1992) (stating that the "question of what amounts to probable cause is purely a question of law"); <u>Sablan v. Dep't of Fin. of Commonwealth of Northern Mariana Islands</u>, 856 F.2d 1317, 1322 (9th Cir. 1988) ("Like a trial, the purpose of an evidentiary hearing is to resolve disputed issues of fact.").

Respectfully submitted,
BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY

By:  <u>/s/ Marton Gyires</u>
MARTON GYIRES
ASSISTANT UNITED STATES ATTORNEY
A#5501696
Email: marton.gyires@usdoj.gov
United States Attorney's Office
101 South U.S. Hwy. 1, Ste. 3100
Fort Pierce, Florida 34950
Telephone: 772-293-0952
Facsimile: 772-466-1020

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk

of Court using CM/ECF, which will transmit notification to all parties of record.

Respectfully submitted,
BENJAMIN G. GREENBERG
ACTING UNITED STATES ATTORNEY

By:   <u>/s/ Marton Gyires</u>
      MARTON GYIRES
      ASSISTANT UNITED STATES ATTORNEY
      A#5501696
      Email: marton.gyires@usdoj.gov
      United States Attorney's Office
      101 South U.S. Hwy. 1, Ste. 3100
      Fort Pierce, Florida 34950
      Telephone: 772-293-0952
      Facsimile: 772-466-1020