UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-14047-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,

v.

SCOTT JOSEPH TRADER,

Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

THIS CAUSE comes before the Court on Defendant Scott Joseph Trader's ("Defendant") Motion to Suppress Illegally Obtained Evidence (DE 13) (the "Motion") filed on September 6, 2017. The United States of America (the "Government") filed a Response to the Motion (DE 14) on September 20, 2017. For reasons stated below, Defendant's Motion to Suppress is denied.

**I.   Facts**

On May 30, 2017, the Thomasville, North Carolina police department received a complaint from a nine-year-old girl's stepfather that the minor had received explicit communications, including pictures and video, from an unknown male user of the "Say Hi" social media application under the username "Scott."[1] (DE 14 at 3). The stepfather provided the minor's mobile device to Thomasville police, who then requested the assistance of the United States Department of Homeland Security ("HSI") in Winston-Salem, North Carolina. (*Id.*). Upon examination, HSI found explicit communications, including child pornography pictures and a video, between the minor and Scott on May 30, 2017 on the social media application "Say

---

[1] References in the Government's Response (DE 14) and search warrant affidavit (DE 14-1) to Smartphone Application #1 and Smartphone Application #2 are references to "Say Hi" and "Kik," respectively. (DE 14 at 5 n.3).

Hi." (*Id.*). One of the photos of a man's face that Scott sent the minor matched the profile picture that Scott used on his Say Hi profile. (*Id.*). Scott also listed his username for the social media application "Kik" on his Say Hi profile. (*Id.*).

Because Say Hi is headquartered outside of the United States, HSI was concerned that it may not be able to obtain Scott's subscriber information from the company promptly, if at all. (*Id.*). Instead, HSI submitted an emergency disclosure request to Kik for Scott's subscriber information based on the Kik username Scott listed on his Say Hi profile. (DE 13 at 3). In submitting the emergency disclosure request, HSI claimed that the user "is believed to be actively molesting and sexually exploiting a minor" and that the "situation involv[es] death or serious physical injury." (*Id.*). Kik responded by providing HSI with the email and recent IP addresses associated with Scott's Kik account. (*Id.*). Scott's Kik account profile picture matched Scott's profile picture on Say Hi, as well as the image of a man's face that Scott sent to the minor through Say Hi. (DE 14 at 3). The information from Kik indicated that the user logged onto the Kik account from May 1, 2017 through May 31, 2017 from the IP address 76.110.46.234 registered to Comcast. (*Id.*).

HSI sent an emergency disclosure request to Comcast for the subscriber information for the IP address disclosed by Kik. (*Id.* at 4). Comcast identified the subscriber and address associated with the IP address as Shelly Trader, Defendant's mother, 1189 S.W. Edinburgh Drive, Port St. Lucie, Florida 34953. (*Id.*). HSI conducted a records check with the Florida Department of Highway Safety and Motor Vehicle (DHSMV), which revealed that Scott Joseph Trader, Defendant, listed his mailing address as the same one associated with the IP address from which the Kik user accessed the application. (*Id.*). In addition, Defendant's driver's license photograph matched the profile pictures on both Say Hi and Kik, and the picture Scott sent to the

2

minor girl during the explicit chat on Say Hi. (*Id.*). HSI conducted a criminal history records check for Defendant and found that he was arrested in 2012 for "Promoting a Sexual Performance by a Child, Lewd Behavior, and Possession of Child Pornography," but those charges were "dropped/abandoned." (*Id.*). Defendant was also arrested in December 2016 for "Lewd Behavior – Molesting a Victim less than 12 years of age." (*Id.*). HSI conducted surveillance of the residence and did not see Defendant enter or leave it, but did see a female child, approximately two years of age, enter the residence. (*Id.*).

HSI then obtained a search warrant for the residence on May 31, 2017, to search and seize all computers, media, and smartphones for evidence of violations of 18 U.S.C. § 2252, related to material involving the sexual exploitation of minors. (DE 14-1 at 11). During the search executed on June 1, 2017, police "located two smart phones, nine SD cards, and a portable hard drive," which "revealed evidence of child pornography," including "depict[ing] [Defendant] involved in sexual behavior with minors." (DE 13 at 5). Defendant was subsequently arrested at his home that same day, (DE 14 at 1), and was charged in a five-count indictment for enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 1); distribution of material containing visual depictions of sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(2) & (b)(1) (Count 2); possession of matter containing visual depictions of sexual exploitation of minors, in violation of 18 U.S.C. § 2252(a)(4)(B) & (b)(2) (Count 3); and production of material containing visual depictions of sexual exploitation of minors in violation of 18 U.S.C. § 2251(a) & (e) (Counts 4 & 5). (DE 17 at 2–3).

On September 6, 2017, Defendant filed the instant Motion to suppress certain materials collected by the Government. (DE 13). The Government filed a Response on September 20,

3

2017. (DE 14). First, Defendant alleges that the search warrant relied on illegally obtained evidence – the subscriber information that the Government obtained from Kik – because the Government's request to Kik for the records amounted to a search under the Fourth Amendment that was not supported by probable cause, a warrant, or any exceptions to the warrant requirement. (DE 13 at 5–12). Second, Defendant challenges the search warrant the Government executed on the residence as facially lacking probable cause. (DE 13 at 5, 12–15). As a remedy, Defendant moves to suppress all of the evidence the Government collected directly or indirectly from Kik's allegedly unlawful release of Defendant's subscriber information and from the search of the residence executed pursuant to an allegedly deficient search warrant. (DE 13 at 15). Defendant also requests an evidentiary hearing and oral argument. (DE 13 at 15). For reasons stated below, Defendant's request for a hearing and motion to suppress are denied.

## II. Discussion

### a. Subscriber Information from Kik

#### i. *Fourth Amendment Search*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citations omitted). This inquiry asks first whether "the individual manifested a subjective expectation of privacy in the object of the challenged search," and then whether "society is willing to recognize that expectation as reasonable" under an objective standard.

*United States v. Davis*, 785 F.3d 498, 507 (11th Cir. 2015) (en banc) (internal quotations omitted) (citations omitted).

The "third-party doctrine" dictates that when an individual voluntarily conveys information to a third party, he or she has no reasonable expectation of privacy in that information, and therefore Fourth Amendment protection does not apply. *Smith*, 442 U.S. at 743–46 (holding that individual had no reasonable expectation of privacy in records of phone numbers dialed held by phone company); *Davis*, 785 F.3d at 511–12 (holding that individual had no reasonable expectation of privacy in cell tower location records of individual's phone held by phone company). Federal courts have uniformly applied the third-party doctrine to hold that individuals have no reasonable expectation of privacy in their email addresses or internet protocol ("IP") addresses when they are voluntarily disclosed to third parties. *United States v. Beckett*, 369 F. App'x 52, 56 (11th Cir. 2010) (finding that defendant "could not have had a reasonable expectation in the [identifying] information obtained from the [internet service providers] and phone companies," including an IP address); *see, e.g.*, *United States v. Caira*, 833 F.3d 803, 806–07, 809 (7th Cir. 2016) ("Because [defendant] voluntarily shared his I.P. addresses with [a third party], he had no reasonable expectation of privacy in those addresses . . . [and so there was] no Fourth Amendment 'search.'"); *United States v. Carpenter*, 819 F.3d 880, 887 (6th Cir. 2016) ("The Fourth Amendment protects the content of the modern day letter, the email. But Courts have not (yet, at least) extended those protections to the internet analogue to envelope markings, namely the metadata used to route internet communications, like sender and recipient addresses on an email, or IP addresses." (citations omitted)); *United States v. Weast*, 811 F.3d 743, 748 (5th Cir. 2016) (holding that an individual has no reasonable expectation of privacy in IP addresses and peer-to-peer shared files); *United States v. Christie*, 624 F.3d 558,

5

573–74 (3d Cir. 2010) ("[N]o reasonable expectation of privacy exists in an IP address, because that information is also conveyed to and, indeed, from third parties, including ISPs."); *United States v. Perrine*, 518 F.3d 1196, 1204–05 (10th Cir. 2008) (holding that individuals have no reasonable expectation of privacy in subscriber information, including IP addresses, held by internet providers); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("[E]-mail and Internet users have no expectation of privacy in the to/from addresses of their messages or the IP addresses of the websites they visit . . . . [E]-mail to/from addresses and IP addresses are not merely passively conveyed through third party equipment, but are voluntarily turned over in order to direct the third party's servers.").

When the government conducts an illegal search under the Fourth Amendment, the exclusionary rule applies such that "[e]vidence seized as a result of [the] illegal search may not be used by the government in a subsequent criminal prosecution." *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

Here, the Government did not engage in a Fourth Amendment search when it obtained Defendant's subscriber information, including his email and IP addresses, from Kik. When Defendant decided to sign up for and use Kik, he voluntarily disclosed his email and IP addresses to Kik in order to use the application. *See, e.g., Caira*, 833 F.3d at 809; *Beckett*, 369 F. App'x at 56; *Forrester*, 512 F.3d at 510. Pursuant to the third-party doctrine, Defendant had no reasonable expectation of privacy in his email or IP addresses when he voluntarily disclosed them to Kik. *See, e.g., Beckett*, 369 F. App'x at 56. Since Defendant had no reasonable expectation of privacy in that information, the Government did not conduct a search under the Fourth Amendment when it asked Kik to voluntarily disclose Defendant's information, and Kik complied. *See id*; *Smith*, 442 U.S. at 743–44; *Davis*, 785 F.3d at 511–12.

Defendant cites no cases supporting his argument that he had a reasonable expectation of privacy in his email and IP address. Instead, Defendant contends that the enormous effect the Internet has had on personal communications requires "greater protections of individual privacy in the medium." (DE 13 at 7–8). Notwithstanding the merits of Defendant's point, "thoughtful arguments for changing the underlying and prevailing law . . . should be directed to Congress and the state legislatures rather than to the federal courts." *Davis*, 785 F.3d at 512.

Defendant also argues that any evidence obtained from Kik's release of Defendant's subscriber information must be suppressed because it was an illegal search without a warrant that does not fall into two exceptions to the warrant requirement: (1) search incident to arrest (DE 13 at 9–10), and (2) exigent circumstances (DE 13 at 10–12). Defendant cites to *Riley v. California*, __ U.S. __, 134 S. Ct. 2473 (2014), for the proposition that the Supreme Court abrogated part of the third-party doctrine when it limited law enforcement's ability to search an arrestee's cell phone incident to arrest without a warrant. (DE 13 at 9–10). He then cites to *United States v. Davis*, 313 F.3d 1300 (11th Cir. 2002), to argue that the facts at issue here do not demonstrate as great a danger to human life as they did in *Davis*, where the exigent circumstances exception to the warrant requirement was rejected. (DE 13 at 11–12). Unfortunately, Defendant's arguments regarding the applicability of exceptions to the warrant requirement are disconnected from the issue here because there was no search in this case. Absent a Fourth Amendment search, the Government did not need to obtain a warrant or even have probable cause before receiving the information voluntarily provided by Kik. The Government's receipt of Defendant's subscriber information from Kik was not a search under the Fourth Amendment, and therefore any evidence obtained as a result is not suppressed.

### ii. *Electronic Communications Privacy Act*

Aside from the Fourth Amendment, Congress has taken steps to protect the digital privacy of individuals through the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2701 et seq. In relevant part, the ECPA prohibits "a provider of a remote computing service or electronic communication service to the public [from] knowingly divulg[ing] a record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity." 18 U.S.C. § 2702(a)(3). However, this general prohibition on providers disclosing information about subscribers or customers to governmental entities is lifted "if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency." 18 U.S.C. § 2702(c)(4). Under the ECPA, an aggrieved party may file a civil suit against the provider or the United States for damages or administrative sanctions. 18 U.S.C. § 2707(c), § 2712(a) (allowing damages actions against providers and the United States, respectively); 18 U.S.C. 2707(d), 2712(c) (allowing administrative discipline against providers and the United States, respectively). The statute is the exclusive source of possible remedies for aggrieved parties. 18 U.S.C. § 2708 ("The remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter."). The suppression of any material obtained by a governmental entity from a provider in violation of the ECPA is not one of those exclusive statutory remedies. *See, e.g., Beckett*, 369 F. App'x at 55–56 ("The ECPA does not statutorily provide for suppression of evidence obtained as a result of violations of the Act." (citing *United States v. Steiger*, 318 F.3d 1039, 1051 (11th Cir. 2003))).

Here, the Government and Kik complied with the ECPA, and, even if they did not, suppression is not an appropriate remedy. Kik, as a "provider of a remote computing service or

electronic communication service to the public," was required to refrain from giving subscriber information to the Government, 18 U.S.C. § 2702(a)(3), unless Kik "in good faith, believe[d] that an emergency involving danger of death or serious physical injury" required the disclosure of such information, 18 U.S.C. § 2702(c)(4). As Defendant admits, in making its request for Defendant's information to Kik, the Government represented that the user "is believed to be actively molesting and sexually exploiting a minor" and that the "situation involv[es] death or serious physical injury." (DE 13 at 3). Based on the Government's representation to Kik, it is reasonable that Kik, in good faith, believed that there was such an emergency present when it decided to provide that information. Thus, Kik's provision of Defendant's subscriber information to the Government likely falls within an exception to the general prohibition under the ECPA. More importantly, however, is that even if the ECPA was violated when Kik provided Defendant's subscriber information to the Government, suppression of that information in a criminal proceeding is not a possible remedy. *Beckett*, 369 F. App'x at 55–56 (citing *Steiger*, 318 F.3d at 1051); *see also* 18 U.S.C. §§ 2707–08, 2712.

In response, Defendant cites several cases that do not address the ECPA but discuss privacy protection given to email addresses under other statutes. *See* (DE 13 at 9 (citing privacy protections for email addresses under FOIA, the Drivers Privacy Protection Act, and state codes)). These cases have no bearing on the ECPA. Thus, evidence obtained as a result of Kik providing Defendant's subscriber information to the Government will not be suppressed due to any hypothetical violation of the ECPA.

    b. <u>Probable Cause in Search Warrant Application for Residence</u>

Under the Fourth Amendment, "absent certain exceptions, police [must] obtain a warrant from a neutral and disinterested magistrate before embarking upon a search." *Franks*, 438 U.S.

at 164. The warrant must "set forth particular facts and circumstances underlying the existence of probable cause." *Id.* at 165. To establish probable cause, the affidavit supporting the warrant application must contain "sufficient information to conclude that a fair probability exist[s] that seizable evidence would be found in the place sought to be searched." *Martin*, 297 F.3d at 1314 (internal quotations omitted) (citation omitted). This "fair probability" is the "kind . . . on which 'reasonable and prudent [people,] not legal technicians, act." *Florida v. Harris*, 568 U.S. 237, 244 (2013) (citations and internal quotations omitted) (alteration in original). "Specifically, the affidavit should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Martin*, 297 F.3d at 1314. When the government conducts a search under the Fourth Amendment without a warrant supported by probable cause, the exclusionary rule applies so that "[e]vidence seized as a result of [the] illegal search may not be used by the government in a subsequent criminal prosecution." *Id.* at 1312 (citing *Franks*, 438 U.S. at 171).

Evidence that the Government obtained from its search of the residence at 1189 S.W. Edinburgh Drive, Port St. Lucie, FL 34953 should not be suppressed because sufficient probable cause existed in the Government's warrant application to search the residence. The affidavit supporting the warrant, which was ultimately issued by a neutral and detached magistrate, (DE 14-1 at 14–17), established a connection between Defendant and the residence, and between the residence and Defendant's criminal activity.

First, the Government provided sufficient facts and circumstances in its search warrant affidavit to amount to probable cause that Defendant engaged in criminal activity, namely, receiving and distributing child pornography with a minor. (*Id.* at 8–11). The affidavit explained that Defendant called himself by his first name, "Scott," on Say Hi, the application that

10

he used to send explicit messages, photos, and video to the minor. (*Id.* at 8). It also explained that one of the pictures that Defendant sent to the minor included a picture with Defendant's face that matched the face of the man in Defendant's profile picture on Say Hi. (*Id.* at 9). The affidavit represented that on his Say Hi profile, "Scott" listed his username for a second social media application, Kik. (*Id.*). It also represented that the profile picture Defendant used to identify himself on Kik matched: (1) the profile picture he used on Say Hi, (2) the picture of the man's face that Defendant sent to the minor on Say Hi, (*id.*), and (3) Defendant's driver's license photograph, (*id.* at 10). In addition, Defendant had previously been arrested twice for offenses related to child pornography and molestation, in 2012 and again in December 2016. (*Id.*). On its face, the allegations contained in the search warrant affidavit represent facts and circumstances sufficient to connect Defendant with criminal activity.

The Government also listed sufficient facts in its affidavit to connect Defendant's criminal activity to the residence searched. It stated the address of the residence, 1189 S.W. Edinburgh Drive, Port St. Lucie, FL 34953, is listed by Comcast as the subscriber address for the IP address 76.110.46.234. (*Id.* at 9). It provided that the IP address 76.110.46.234 is the one from which Defendant logged onto his Kik account on the same date that he had the explicit conversation with a minor on Say Hi. (*Id.* at 8–9). The affidavit represented that the residence address is also the same address that Defendant listed as his mailing address with the Florida DHSMV. (*Id.* at 10). Given that the standard for probable cause is merely a "fair probability" that evidence of a crime will be found at a residence as judged by a reasonable person, *Harris*, 568 U.S. at 244, the facts and circumstances in the affidavit support a connection between Defendant's criminal activity and the residence sufficient for probable cause to search.

Defendant argues that the facts in the affidavit supporting the search warrant represented a "hunch" "insufficient [to demonstrate] probable cause." (DE 13 at 12). To support his argument, Defendant cites *United States v. Contreras-Rodriguez*, 291 F. App'x 989 (11th Cir. 2008), for the proposition that a warrant is deficient when there is insufficient probable cause connecting a residence to illegal activity. (DE 13 at 13). As previously noted, there is sufficient probable cause here connecting the searched residence to Defendant's criminal activity because (1) the residence was listed as Defendant's mailing address with the Florida DHSMV; (2) the IP address from which Defendant accessed Kik on the same date that Defendant exchanged child pornography on Say Hi was registered to a subscriber at that residence; (3) Defendant's photograph on his driver's license, Kik profile, and Say Hi profile all matched the photograph of the man's face that he sent the minor when exchanging child pornography; and (4) Defendant used his real first name, Scott, to chat on Say Hi. (DE 14-1 at 8–10). Thus, there were sufficient facts contained in the search warrant affidavit to establish a nexus between Defendant's criminal activity and the residence to amount to probable cause for a search warrant.

c. Hearing

Defendant requests an evidentiary hearing and oral argument of the issues, but provides no support for this request. (DE 13 at 15). "[W]here a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion." *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (quoting *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984)). As already demonstrated, whether the subscriber information from Kik was a Fourth Amendment search and whether the Government's warrant to search the residence was supported by probable cause are questions of

law that can be finally decided based on the facts before this Court. Since Defendant does not allege facts which, if proved, would require relief for Defendant, an evidentiary hearing is not necessary. Accordingly it is hereby

**ORDERED and ADJUDGED** that:

1) Defendant's Motion (DE 13) is hereby **DENIED.**

2) Defendant's request for an evidentiary hearing is **DENIED.**

**DONE and ORDERED** in Chambers in West Palm Beach, Florida, this **25** day of September, 2017.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

CC: Counsel of Record